IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS JOYE | : | |
| 17 S. Regent Street | : | |
| Hanover Township, PA 18706 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.: |
| | : | |
| v. | : | |
| | : | |
| TRANS-MED AMUBLANCE, INC. | : | |
| 14 Marion Street | : | **JURY TRIAL DEMANDED** |
| Luzerne, PA 18709 | : | |
| | : | |
| Defendant. | : | |

### CIVIL ACTION COMPLAINT

Dennis Joye (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Trans-Med Ambulance, Inc. (*hereinafter* "Defendant") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981) and applicable Pennsylvania common law. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Trans-Med Ambulance, Inc., a Pennsylvania corporation, is in the ambulance service industry, with an address as set forth in the above caption.

8. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff is a black (African-American) male.

11. Plaintiff was employed by Defendant as a Paratransit Driver for approximately 3 years, from in or about March of 2017 until his unlawful termination (discussed further *infra*) on or about March 16, 2020.

12. Plaintiff was primarily supervised by Operations Manager, Michael Stets (Caucasian, *hereinafter* "Stets").

13. Throughout his employment with Defendant, Plaintiff was a hard-working employee who performed his job well.

### -Race Discrimination-

14. At the time of Plaintiff's termination, he was one of only two black employees working for Defendant out of a workforce of over 100 employees.

15. Throughout the course of his employment with Defendant, Plaintiff was subjected to racial discrimination, racial slurs, and harassment by Defendant's non-black management and co-workers, including but not limited Stets. By way of example, but not intended to be an exhaustive list:

   a. Unlike Plaintiff's non-black co-workers, Stets treated Plaintiff in a demeaning and derogatory manner, and regularly talked down to him;

   b. Unlike Plaintiff's non-black co-workers, policies were selectively applied against Plaintiff;

   c. Stets subjected Plaintiff to verbal abuse and racially offensive comments, such as repeatedly referencing Plaintiff's "black ass" and informing Plaintiff that he would fire "his black ass"; and

   d. On one occasion, Plaintiff overheard two Caucasian employees discussing a black ambulance patient who had "her hair in twists like a nigger." When Plaintiff commented to the two Caucasian employees that they could not talk like that, they replied "we can say nigger anytime" and "we can call you a nigger, because we have black friends."

16.     Leading up to his termination, Plaintiff complained to Human Resources ("HR"), personnel, Melissa Mikulski (Caucasian, *hereinafter* "Mikulski"), on more than one occasion about the aforesaid instances or discriminatory, harassing, and disparate treatment that he was being subjected to because of his race.

17.     Mikulski informed Plaintiff that she would "look into" his allegations but he was never informed as to the outcome, and he continued to be subjected to hostility and animosity because of his race.

18.     Shortly after Plaintiff's most recent complaints of race discrimination, he was abruptly terminated on or about March 16, 2020, for allegedly failing to complete compliance training.

19.     Defendant's purported reason for Plaintiff's termination – failure to complete compliance training – is completely pretextual because: (1) Plaintiff consistently worked hard for Defendant and performed his job well; (2) Plaintiff did not have a significant discipline history while working for Defendant; (3) after Plaintiff had complained to Mikulski about race discrimination, he was required to report solely to Mikulski regarding his daily job duties, and at no time leading up to his termination did Mikulski inform Plaintiff that he needed to complete his compliance training or that a failure to do so would result in his termination, despite the fact that Plaintiff would ask Mikulski **on a daily basis** what he needed to complete each day; and (4) Plaintiff had suffered a work-related injury (discussed further *infra*) and while on light duty no longer had access to the work tablets driver employees were provided to check notifications from management and HR regarding compliance training and other duties, which Defendant was perfectly aware of.

20. Therefore, Plaintiff believes and avers that he was subjected to a hostile work environment and terminated because of his race and in retaliation for his complaints of race discrimination.

### -Worker's Compensation Retaliation-

21. Separately and apart from the discrimination and retaliation that Plaintiff was subjected to because of his race and/or his complaints of race discrimination, Plaintiff was subjected to retaliation for filing a worker's compensation claim and/or for seeking worker's compensation benefits.

22. In or about October of 2019, Plaintiff suffered a work-related injury to his lower back while unloading a patient from a transit van.

23. Immediately following his aforesaid work-related injury, Plaintiff reported the injury Defendant's management and made a claim for worker's compensation benefits.

24. Thereafter, Plaintiff was seen by Defendant's worker's compensation doctor, who released Plaintiff to return to work on light-duty, with restrictions of no lifting, pushing, and pulling over 10 pounds, no operating company vehicles, with walking and standing as needed to relieve the pain in his back.

25. While Plaintiff was provided with light-duty work by Defendant of wiping and cleaning work surfaces and cataloging receipts and invoices by year, Stets exhibited clear frustration with Plaintiff's work-related injury, his application for worker's compensation benefits, and his need for light duty work, by assigning him jobs duties not in line with his doctor's recommended restrictions and hostilely berating Plaintiff that he "need[s] to be able to do the jobs" he is assigned, without question.

26. Leading up to his termination, Plaintiff complained to Mikulski of Stet's aforesaid failure to abide by his doctor's restriction; however, Mikulski merely replied that she was not

aware of specific restrictions and required doctor's notes, which both Plaintiff and his doctors had provided on multiple occasions.

27. Shortly thereafter, Plaintiff was abruptly terminated on or about March 16, 2020, for pretextual reasons (discussed *supra*).

28. Plaintiff believes and therefore avers that he was terminated in substantial part for making claims for worker's compensation benefits and/or seeking worker's compensation benefits and/or for his work-related injuries

## COUNT I
### Violations of 42 U.S.C. Section 1981
([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)

29. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30. During Plaintiff's employment with Defendant, he was subjected to discrimination and a hostile work environment through pretextual discipline, disparate treatment and demeaning and/or derogatory comments, racial slurs, and treatment because of his race and/or complaints of race discrimination.

31. Instead of properly investigating and addressing Plaintiff's aforesaid complaints of race discrimination, Defendant's non-black management left his legitimate concerns unresolved, and subjected him to increased hostility and animosity (as discussed *supra*).

32. On or about March 16, 2020, shortly after his last complaints of race discrimination and a hostile work environment to Defendant's non-black management, Plaintiff was abruptly terminated.

33. Plaintiff believes and therefore avers that he was subjected to a hostile work environment and terminated from his employment with Defendant because of his race and his complaints of race discrimination.

34. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Section 1981.

## COUNT II
### Common-Law Wrongful Discharge
### (Public Policy Violation)

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Upon information and belief, Plaintiff was terminated in substantial part for making claims for worker's compensation benefits and/or seeking worker's compensation benefits and/or for his work-related injuries (as discussed *supra*).

37. It is against Pennsylvania's public policy for an employee to be terminated for making workers' compensation claims and/or seeking workers' compensation benefits. These actions as aforesaid constitute wrongful termination in Pennsylvania. *See Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1997); *Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297, 883 A.2d 511, 516 (2005).

38. The mere temporal proximity between Plaintiff's claim for worker's compensation and his termination creates an inference that his termination was in retaliation for making such claims.

39. These actions as aforesaid constitute wrongful termination in Pennsylvania.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's

illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

      C.      Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

      D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

      E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: March 22, 2021